RECEIVED
IN LAKE CHARLES, LA

DEC 2 8 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| FRANCES BEAUDOIN | : | DOCKET NO. 2:06 CV 0900 |
| VS. | : | JUDGE MINALDI |
| WESTLAKE STYRENE LP<br>WPE CORPORATION and<br>WESTLAKE MANAGEMENT<br>SERVICES INC. | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 30] on plaintiff Frances

Beaudoin's ("Beaudoin") employment discrimination claims, filed by the defendants

("Westlake").  Beaudoin filed an Opposition [doc. 38].  The defendants filed a Reply [doc. 40].

## FACTS

Beaudoin, an African-American woman, is a former employee of Westlake Management

Services.[1]  While working as a loading operator, she was involved in an accident at Westlake's

Lake Charles facility on June 17, 2005.[2]  On June 17, 2005, Larson LeBlanc, a white man, was

working as the day operator assisting Sean Vest, also a white man, who was working as a day

shift operator.[3]  LeBlanc was responsible for reporting any issues to the shift supervisor, Mike

---

[1] Def.'s Mot. for Summary Judgment, at 1.

[2] Pl.'s Mot. in Opposition to Def.'s Mot. for Summary Judgment, at 4.

[3] *Id.*  at 9.  Typically, a day shift operator and a day operator would run the Co-Products area. *Id.*  at 8.

1

Beasley, a white man.[4]  During the shift, Co-Products "was receiving off-spec product and
sending propylene back to the unit," and the bullets were filling up faster than normal.[5]  When
Vest "made relief" with Beaudoin at the end of his shift, Vest allegedly stated that they left her in
a bind, and the shift supervisor had been informed of the problem.[6]  Once the tanks filled to
capacity, about four hours into Beaudoin's shift, the propylene began to release into the
atmosphere and released thick, black smoke, at which point Beaudoin met her supervisor, Greg
Simien, an African-American man, at the flare stack to determine why the line was flaring.[7]
Simien later testified that no one could have predicted that the line would flare, and that if
Beaudoin knew, she would have taken action.[8]

Following the accident, Westlake conducted an internal investigation under its
disciplinary policy, which is called the Corrective Action Procedure.[9]  Under this policy, four
levels of discipline are available: verbal warning (documented in the file), written warning,
suspension (without pay), and/or termination of employment.[10]  To make its disciplinary
procedure more consistent, Westlake started having "consistency meetings," which would
examine previous employee letters of discipline and implement the progression based on whether

---

[4] *Id.* at 9.

[5] *Id.*

[6] *Id.*

[7] Def.'s Mot. for Summary Judgment, at 1.

[8] Pl.'s Ex. 5, at 38 (Simien Aff.)

[9] Def.'s Ex. 4 (Westlake's Corrective Action Procedure).

[10] Def.'s Ex. 5 (Courville Dep. 12:15-12:20).  Discipline may begin at any of the
disciplinary levels depending on the seriousness of the misconduct.  *Id.*

the violation was "pretty recent" and of a "similar nature."[11]

The investigation revealed that LeBlanc made an error lining up the product flows, LeBlanc, Beaudoin, and Vest did not resolve why the tank levels were rising so rapidly, Beaudoin did not address the dangerously high level in the tanks, Beaudoin did not seek assistance from a supervisor to troubleshoot, and none of the operators appreciated the magnitude of the situation.[12] The investigation team[13] further concluded that the employee operators (Beaudoin and LeBlanc) would receive two levels of discipline under the Corrective Action Policy, Vest would receive immediate termination, and supervisors Beasley and Simien received one step of discipline.[14] Beaudoin's two steps of discipline resulted in her termination, because she had a verbal warning, written warning, and a prior suspension[15] in her personnel file.[16] LeBlanc's two steps of discipline resulted in a two-day suspension, since LeBlanc only had a prior verbal warning in his personnel file.[17]

Not long after Beaudoin's termination Westlake operator Stacy Edwards overheard male

---

[11] Pl.'s Ex. 6 (Courville Dep. 30).

[12] Def.'s Ex. 11 (Formal Investigation Report).

[13] The investigation team was comprised of Wayne Ahrens, the styrene unit manager, Mike Sovereign, production superintendent, Kerri Courville, human resources area manager, Steve Edwards, director of human resources, Steve Pocsik, former vice-president, and Greg Simien, shift supervisor. Def.'s Ex. 5 (Courville Dep. 29:12-29:20).

[14] Def.'s Ex. 14 (Ahrens' Dep. 24:10-24:23).

[15] Following the suspension, Beaudoin was warned that her involvement in another incident could be grounds for termination. Def.'s Ex. 6 (Pl.'s Dep. 194:9-11).

[16] Ex. 15, Beaudoin's Separation Notice, Westlake, p. 156.

[17] Ex. 19, LeBlanc's Suspension.

3

Westlake operators discussing Beaudoin's termination.[18] The men apparently said "Steve Pocsik didn't want any women out there...it wouldn't be long and they would all be gone."[19] This comment prompted Edwards to speak with Courville, who told Edwards that she "really don't think he would say that...that had nothing to do with it...it wasn't that they just got rid of Frances."[20] Edwards then testified that she asked Pocsik directly about his alleged comment, and he said he didn't say it.[21]

On August 13, 2005, Beaudoin filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Westlake terminated her employment based on her race, gender, and in retaliation for filing a previous charge of discrimination in 2002. Because Beaudoin failed to file suit within ninety days of receipt of her dismissal and notice of rights, this suit alleges race and sex discrimination under Louisiana state law only.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the file, including the opposing party's affidavits, demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment

---

[18] Pl.'s Ex. 4 (Edwards Dep.)

[19] *Id.*

[20] *Id.*

[21] *Id.*

4

by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1975). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party...." *Id.*

## ANALYSIS

### A.) Motion for Summary Judgment as to defendants Westlake Styrene LP & WPE Corporation

The defendants move to dismiss Westlake Styrene, LP and Westlake Corporation, two individual corporations that are affiliated with Westlake Chemical Corporation, Beaudoin's former employer. The defendants argue that "employer" is a "legal or commercial entity receiving services from an employee and, in return, giving compensation of any kind to an employee." LA. REV. STAT. ANN. § 23:302(2). The defendants argue that only Westlake Management Services satisfies the definition of employer, since Beaudoin did not provide the other corporations with services, nor did they give Beaudoin compensation at the time of her termination. Beaudoin herself admits she is unaware why she named the two other corporations

5

as defendants, and raises no other independent grounds for liability as to these entities.[22]

Beaudoin does not address the defendants' argument that defendants Westlake Styrene and WPE

Corporation should be dismissed. Accordingly, because there is no material issue of fact in the

record refuting defendants' assertion that only Westlake Management Services was Beaudoin's

employer, the two other corporations are dismissed from this suit.

### B.) Motion for Summary Judgment as to Beaudoin's employment discrimination claims

Beaudoin claims that Westlake discriminated against her in violation of LA. STAT. REV.

ANN. § 23:332 by terminating her employment based on her gender and her race. Louisiana's

employment discrimination statute, LA. STAT. REV. ANN. § 23:332, is analyzed under the same

standards as Title VII. *Kimble v. Georgia Pacific Corp.*, 245 F. Supp.2d 862 (M.D. La. 2002).

To prevail, Beaudoin must demonstrate that Westlake intentionally discriminated against her

under the *McDonnell Douglas* three-step burden shifting framework. *McDonnell Douglas Corp.

v. Green*, 411 U.S. 792, 802-04 (1973). First, Beaudoin must demonstrate that she has a *prima

facie* case[23] of discrimination. *Id.* at 802. For purposes of this motion, the defendants do not

dispute that Beaudoin can establish a *prima facie* case of unlawful discrimination.

Second, the burden of production then shifts to the defendants to articulate a legitimate,

non-discriminatory reason for the adverse employment action, supported by admissible evidence.

---

[22] Def.'s Ex. 6 (Pl.'s Dep. 10:8-24.)

[23] A *prima facie* case requires that the plaintiff prove 1.) That she is a member of a
protected class, 2.) That she was qualified for the position, 3.) That she suffered an adverse
employment action, and 4.) That she was replaced by someone outside the protected class or that
others outside the protected group and similarly situated were treated more favorably. *Okoye v.
Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001).

*Reeves v. Sanderson Plumbing*, 530 U.S. 133, 142 (2000) (noting that this a burden of production, not persuasion, and can involve no credibility assessment). Westlake argues that it had a legitimate, non-discriminatory reason for Beaudoin's termination–that Beaudoin was terminated under the company's progressive disciplinary policy due to her involvement in the June 17, 2005 incident. Beaudoin argues that the Corrective Action Procedure is undefined and "implemented at the whim of management." Beaudoin also argues that management should have not exercised their discretion in terminating her, and should have given her a suspension instead. She further argues that LeBlanc's prior record should have contained more than a "verbal." Given the defendants' supporting documents, which include affidavits from several involved parties and the formal investigation report, this court finds that the defendants have met their burden of production and have proffered a legitimate, non-discriminatory reason for Beaudoin's termination.

Lastly, the sole remaining issue is whether there was "discrimination vel non." *Reeves*, 530 U.S. at 143. The plaintiff is afforded an opportunity to demonstrate by a preponderance of the evidence that the employer's proffered non-discriminatory reason was pretext for discrimination. *Id.* After the defendants satisfy their burden of production, the presumption of discrimination "drops out of the picture," but the trier of fact may still consider the plaintiff's *prima facie* case and the inferences properly drawn from that evidence as to whether the defendant's proffered reason is mere pretext. *Id.* Thus, a plaintiff's *prima facie* case and sufficient evidence to reject the employer's explanation alone may permit a finding of liability. *Id.* at 149 (noting that in summary judgment motions, the court may consider the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and

7

any evidence that supports the employer's case).

In *Reeves*, the plaintiff made a substantial showing that the employer's reason for termination–improper maintenance of attendance records and failure to discipline employees–was false. *Id.* at 144. Reeves demonstrated the falsity of his employer's justification through evidence that he had properly maintained the attendance records, and that the automated timeclock often failed to scan the employees' timecards, after which he would conduct a visual attendance check. *Id.* at 144-45. Reeves also presented evidence that he was not responsible for employee discipline, but that he only reviewed the attendance reports. *Id.*

After conducting an investigation, the defendants concluded that the error was made in the shift prior to Beaudoin's, but that Beaudoin failed to resolve the problem. The defendants disciplined the employees from the first shift for making the mistake, and the employees from the second shift for failing to remedy the mistake. Both Beaudoin and LeBlanc received two steps of discipline under the company's policy. The employees received different punishments–Beaudoin received termination and LeBlanc received suspension–due to their prior records. Beaudoin overlooks the fact that Westlake can apply its own policy in the manner it sees fit, so long as it is not discriminatory. Beaudoin does not demonstrate evidence that controverts the defendants' legitimate reason for the discipline. Accordingly, Beaudoin did not present evidence demonstrating that the defendants' legitimate reason was false and thus pretext for discrimination.

Alternatively, Beaudoin may demonstrate that the defendants' disciplinary decision was in part motivated by discriminatory animus. *Machinchick v. P. B. Power, Inc.*, 398 F.3d 345, 351-52 (5th Cir. 2005). Under the "mixed-motive" alternative, the plaintiff can also meet her

8

burden by "offering sufficient evidence to create a genuine issue of material fact...that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Id.* at 352. If the plaintiff succeeds in demonstrating the mixed-motive alternative, then the employer must show that it would have made the same adverse employment decision absent the discriminatory motive. *Id.* If the defendant fails to show this, then the plaintiff prevails. *Id.*

In *Machinchick*, the court found the plaintiff successfully demonstrated the employer had a mixed motive in his termination that included age discrimination. *Id.* at 355. The plaintiff introduced evidence that in the weeks before his termination, his supervisor sent e-mails discussing his intent to hire younger engineers and designers "whose mindsets reside in the 21st Century." *Id.* at 353. The plaintiff also demonstrated that his supervisor said he had a "low motivation to adapt" to change. *Id.*

Beaudoin fails to demonstrate that she has a viable mixed-motive alternative. She received two levels of discipline, as did LeBlanc, who is a white man. The fact that Beaudoin's existing record resulted in her termination while LeBlanc only received a suspension does not demonstrate that the defendants' disciplinary decision was motivated in part by discrimination. This conclusion is bolstered by the fact that after Beaudoin's last disciplinary action, she was warned that her next incident could subject her to termination.

The only possible allusion to a discriminatory motive is the comment that Stacy Edwards overheard. Ms. Edwards was either at fire or rescue school, and "the guys" were discussing Beaudoin's termination.[24] "The guys" said that Vice President Steve Pocsik did not want any

---

[24] Pl.'s Ex. 6 (Edwards Dep.)

9

women "out there and there wouldn't be many–it wouldn't be long and they would all be gone."[25] The statement from "the guys" to Edwards basically amounts to a company rumor and not credible evidence of a discriminatory motive.[26] Neither Beaudoin nor Edwards identifies "the guys." It is also unclear whether Pocsik uttered those words to any of "the guys," or whether the men simply speculated on the cause for termination. Without a more concrete link to Pocsik, this statement is not reliable. Unlike the employer in *Machinchick*, who sent e-mails and made comments from which a court could infer a discriminatory animus toward older workers, there is no credible evidence that Pocsik or any other decisionmaker made discriminatory comments. Beaudoin did not present any evidence that the statement "the guys" made to Edwards was anything more than company gossip. Accordingly, Beaudoin failed to show the mixed-motive alternative applies in her case.

## CONCLUSION

Because there is no evidence that Westlake Styrene and WPE Corporation employed Beaudoin, these corporations are dismissed from this lawsuit. Furthermore, Beaudoin has failed to demonstrate that the defendants' reason for her termination was pretext, or that the mixed-

---

[25] *Id.*

[26] The defendants argue that this is inadmissable hearsay and may not be considered in this motion for summary judgment. Beaudoin argues that this statement is admissible as an admission by a party-opponent under FED. R. EVID. 801(d)(2)(D), which provides a statement is an admission of the employer if it was made "by his agent or servant concerning a matter within the scope of his agency or employment, [and] made during the existence of the relationship." Courts have admitted into evidence discriminatory statements made by the plaintiff's supervisor to another employee, finding them to be within the scope of employment. *Watts v. Kroger Co.*, 955 F. Supp. 674, 679 (N.D. Miss. 1997). Thus, if the proper foundation is laid, these types of statements are admissible under FED. R. EVID. 801(d)(2)(D) as an admission by a party-opponent.

10

motive alternative applies.  Accordingly, summary judgment is granted in favor of the defendants on both counts.

Lake Charles, Louisiana, this _28_ day of _____Dec_____, 2007.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

11